# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Black and Red Ghia Cellphone<br>2022250100040501-004<br>("Target Device 2") | )<br>)<br>) Case No.  **23mj1953-JLB**<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the   Southern   District of   California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 and 846 | Possession with Intent to Distribute and Conspiracy to do the Same |
| 21 USC Sec. 952, 960, 963 | Importation of Controlled Substance and Conspiracy to do the Same |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Gwendolyn Perez*
Applicant's signature

Gwendolyn Perez, DEA Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

*Jill Burkhardt*
Judge's signature

Date: May 31, 2023

City and state: San Diego, California          Hon. Jill L. Burkhardt, United States Magistrate Judge
Printed name and title

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black and Red Ghia Cellphone
> Seizure No. 202350100035501-001
>
> ("Target Device 2")

The Target Device is currently in the possession of Drug Enforcement Administration, located at 2055 Sanyo Ave., San Diego, CA 92154.

## ATTACHMENT B-2
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 23, 2023, up to and including May 23, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substance, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Gwendolyn Perez, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>Blue iPhone
>Seizure No. 2023250100035501-001
>("Target Device 1")

>Black and red Ghia cellphone
>Seizure No 2023250100035501-001
>("Target Device 2")

as further described in Attachment A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 21, United States Code 952, 960, and 963 as further described in Attachment B-2. The requested warrant relates to the investigation and prosecution of Sergio Alejandro HERNANDEZ-PEREZ ("HERNANDEZ-PEREZ") for possession with intent to distribute and importation of approximately 68.225 kilograms (150.41 pounds) of methamphetamine from Mexico into the United States. The Target Device is currently in the custody of the Drug Enforcement Administration located at 2055 Sanyo Ave., San Diego, CA 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Drug Enforcement

Administration (DEA) since October 2019. I am currently assigned to the DEA district office in San Diego, California. I have been working with a Homeland Security Investigations (HSI) led team since 2020.

4. During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation.  When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions

set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

   a. tending to indicate efforts to import controlled substances from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

7.     On May 23, 2023, at approximately 11:18 AM PST, a 2013 Nissan Versa ("TARGET VEHICLE") entered the United States from Mexico at the San Ysidro Port of Entry through the vehicle lanes. The driver and sole occupant was identified as Diego IBARRA ("IBARRA"). A Customs and Border Protection Officer (CBPO) obtained two

negative declarations from IBARRA. IBARRA stated he was going to Chula Vista, California.

8. The TARGET VEHICLE and IBARRA were subsequently referred for secondary inspection. A CBPO asked IBARRA to exit the TARGET VEHICLE and IBARRA was escorted to a security office, out of view of the secondary inspection area. A CBPO scanned the TARGET VEHICLE with a Z-Portal x-ray machine and observed anomalies in the quarter panels of the TARGET VEHICLE. In addition, another CBPO observed packages concealed in the quarter panels of the TARGET VEHICLE. Based on training and experience, including having found packages similarly concealed in vehicles many times in the past which proved to contain drugs after field and lab testing, officers and agents believed the packages contained prohibited drugs.

9. To facilitate further investigation, the packages were left in place and not opened or inspected. Investigators decided to try to follow the TARGET VEHICLE to its intended destination. Because of the exigencies of the situation and to avoid a longer delay, which might cause the driver or any co-conspirators to suspect or detect that the packages had been discovered by law enforcement, investigators installed a GPS tracking device on the vehicle at approximately 11:30 AM PST, so that the TARGET VEHICLE and IBARRA could leave the San Ysidro Port of Entry and continue to the intended destination. Prior to activating the GPS tracking device, a tracker warrant was submitted by a Homeland Security Investigations Special Agent and approved by Magistrate Judge William V. Gallo, at which time the tracker was activated.

10. The TARGET VEHICLE was released from secondary inspection at 11:38 AM PST. Agents observed the TARGET VEHICLE exit the San Ysidro Port of Entry and proceeded to drive to a McDonald's located in San Ysidro, California. IBARRA exited the TARGET VEHICLE and entered the McDonald's. The TARGET VEHICLE and IBARRA remained at the McDonald's under constant surveillance by agents. At no time did any additional persons enter or exit the TARGET VEHICLE and at no point was anything removed from the TARGET VEHICLE.

11. IBARRA proceeded to exit the McDonald's, entered the TARGET VEHICLE, and drove to a community located in Bonita, CA. Agents observed IBARRA drive in a manner consistent with patterns of counter surveillance, which are used as a means to detect being followed. At approximately 12:30 PM PST, IBARRA drove to a nearby park, where unbeknownst to agents, a driver swap was conducted. At approximately 12:38 PM PST, agents observed the TARGET VEHICLE waiting for an extended period of time at a green light as a possible counter surveillance maneuver by the driver. The TARGET VEHICLE and the new subject, later identified as Sergio Alejandro HERNANDEZ-PEREZ ("HERNANDEZ-PEREZ") entered a residential community located in Bonita, CA and was observed using a cell phone.

12. Based on the GPS tracker information, TARGET VEHICLE was in the of area of Plaza Carlos in Bonita, California. Agents saw the TARGET VEHICLE enter a set of apartment complexes and/or condominiums in Plaza Carlos. After the TARGET VEHICLE entered the apartment complex, agents momentarily lost sight of TARGET VEHICLE. Agents believed that the vehicle had entered a garage since the TARGET VEHICLE could not be seen. At approximately 12:54 PM PST, the GPS tracker notified agents of a motion alert of the TARGET VEHICLE, which was still in the Plaza Carlos area. At approximately 2:15 PM PST, agents observed the TARGET VEHICLE exit the garage of a residence located at 2938 Plaza Carlos, Bonita, California, and conducted a traffic stop on the TARGET VEHICLE. HERNANDEZ-PEREZ was the driver and sole occupant of the TARGET VEHICLE. At this time agents became aware of the driver swap. Several packages of narcotics were observed in plain view within the garage of the residence. At approximately 2:37 PM PST, agents went back to the park where the driver swap was conducted, found IBARRA and took him into custody.

13. At approximately 2:48 PM PST, HERNANDEZ-PEREZ was advised of his *Miranda* Rights and elected to give a statement. HERNANDEZ-PEREZ admitted to picking up TARGET VEHICLE from the park located at 7373 Tooma St., San Diego, California and driving it to his residence at 2938 Plaza Carlos, Bonita, California.

HERNANDEZ-PEREZ stated he parked the TARGET VEHICLE in his garage at 2938 Plaza Carlos, Bonita, California and called the Mexico coordinator, who HERNANDEZ-PEREZ has stored in his phone as "Santos" for further guidance. HERNANDEZ-PEREZ stated Santos instructed him to unload the packages from the TARGET VEHICLE. HERNANDEZ-PEREZ stated he removed approximately 100 packages from both quarter panels, the rear passenger door, front driver and passenger seat backrest, passenger side floor, dashboard, firewall, front fender and front bumper of the TARGET VEHICLE and placed them into four boxes. HERNANDEZ-PEREZ stated he believed the packages contained "coke". HERNANDEZ-PEREZ stated Santos agreed to pay him $1,000 USD to unload and wait for further instructions. HERNANDEZ-PEREZ believed someone would come to retrieve the narcotics from his residence. HERNANDEZ-PEREZ stated that it was his first time unloading narcotics from a vehicle. HERNANDEZ-PEREZ admitted to previously picking up approximately $9,000 USD for delivery to Mexico at a trolley station located at E Street, Chula Vista California in exchange for $300 USD. HERNANDEZ-PEREZ gave consent to search the garage and his bedroom at his residence.

14.   At approximately 6:27 PM PST, a warrant for HERNANDEZ-PEREZ's residence was approved by Magistrate Judge William V. Gallo. A search of the residence resulted in the discovery of suspected methamphetamine in a clear small plastic bag in HERNANDEZ-PEREZ's bedroom and several clear cellophane-wrapped bundles containing suspected methamphetamine in the garage of the residence.

15.   IBARRA, HERNANDEZ-PEREZ, and the TARGET VEHICLE were all transported to San Ysidro, California Port of Entry for processing. A CBPO discovered eight additional clear cellophane-wrapped bundles containing suspected methamphetamine concealed within voids of the TARGET VEHICLE. The total number of packages was 126 (118 packages were found at L-1 and 8 additional packages were found in the TARGET VEHICLE). The total weight of the 126 packages was approximately 68.225 kilograms (150.41 pounds). A presumptive test of a sample of the 126 packages yielded positive results for properties of methamphetamine. The weight for the narcotics discovered in

HERNANDEZ-PEREZ's bedroom, which also tested positive for properties of methamphetamine, was approximately 63.6 grams (0.14 pounds).

16. Target Device 1 was found in HERNANDEZ-PEREZ's hand, Target Device 2 was found in HERNANDEZ-PEREZ's left pocket and both were seized at the time of arrest. Agents allowed HERNANDEZ-PEREZ to make a phone call. Agents showed the Target Device 1 and Target Device 2 to HERNANDEZ-PEREZ, and HERNANDEZ-PEREZ acknowledged that both Target Device 1 and Target Device 2 belonged to him.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on April 23, 2023, up to and including May 23, 2023.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

21. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

# CONCLUSION

22. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of HERNANDEZ-PEREZ's violations of Title 21, United States Code, Section 841. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A-1 and A-2, and seize the items listed in Attachment B-1 and B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Gwendolyn Perez*

_____
Special Agent Gwendolyn Perez
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 31st day of May, 2023.

*Jill Burkhardt*

_____
Honorable Jill L. Burkhardt
United States Magistrate Judge

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black and Red Ghia Cellphone
    Seizure No. 202350100035501-001

    ("Target Device 2")

The Target Device is currently in the possession of Drug Enforcement Administration, located at 2055 Sanyo Ave., San Diego, CA 92154.

## ATTACHMENT B-2
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 23, 2023, up to and including May 23, 2023:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substance, or some other federally controlled substance, from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.